IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TIMOTHY B. FEICK,

   Plaintiff,

v.

SGT. SMITH ET AL.,

   Defendants.

Civil Action No.: BAH-24-2088

**MEMORANDUM OPINION**

Timothy B. Feick, a self-represented plaintiff incarcerated at Jessup Correctional Institution ("JCI"), filed this civil rights complaint pursuant to 42 U.S.C. § 1983. *See* ECF 5 (amended complaint).[1] In response, Defendant Sergeant Smith filed a motion to dismiss or, in the alternative, motion for summary judgment (ECF 14), Defendant Sanya Adebayo, RN, through Centurion Health ("Centurion") counsel, filed a motion to dismiss or, in the alternative, motion for summary judgment (ECF 17) and Defendants Adebayo and Glory Besong, LPN, through YesCare Corp. ("YesCare") counsel, filed a motion to dismiss or, alternatively, for summary judgment (ECF 25).[2] Feick subsequently filed his own motion for summary judgment, which the Court also construes as his opposition to Defendants' motions. ECF 29. Defendants Adebayo and Besong oppose Feick's motion. ECF 30 and 32. Feick also filed a motion for notice of address change and noted a request for "legal assistance to move this complex case through the courts in a timely

---

[1] Feick also sued Jessup Correctional Institution and its Warden. ECF 5, at 3. The Court dismissed both by order dated September 19, 2024. *See* ECF 6, at 2.

[2] Feick was mailed Rule 12/56 notices alerting him to the filing of all dispositive motions. *See* ECF 15 (noting the filing of ECF 14); ECF 19 (noting the filing of ECF 17), and ECF 26 (noting the filing of ECF 25).

manner," which the Court will construe as a request for the appointment of counsel. ECF 34, at 3. No hearing is required to address the pending motions. *See* Local Rule 105.6 (D. Md. 2025). For the reasons that follow, and by separate order which follows, Defendant Smith's motion (ECF 14), construed as a motion to dismiss, shall be GRANTED, Defendants Adebayo and Besong's motion (ECF 25), construed as one for summary judgment, shall be GRANTED, Plaintiff's motion for summary judgment (ECF 29) shall be DENIED, and Defendant Adebayo's motion (ECF 17) shall be DENIED as moot. The motion for appointment of counsel (ECF 34) is DENIED.

## I.   BACKGROUND

### A.   Amended Complaint Allegations and Motion for Summary Judgment

Feick alleges that he has not been properly treated for hypertension and epilepsy while incarcerated at JCI. ECF 5, at 7. He contends that the dosage of his epilepsy medication, Keppra, was lowered from 750 mg to 500 mg without any assessment of his condition. *Id.* LPN Besong advised him to file a sick call to resolve his issue, which he initially submitted on August 17, 2023, while in administrative segregation.[3] *Id.* at 7, 8. After filing numerous requests, Feick was seen by Besong and another provider on November 10, 2023, at which time it was discovered that his blood pressure was "dangerously high" and he received an immediate dose of "Klonidine." *Id.* at 7, 9. Feick reported his concerns about his medications and was told they would be renewed and corrected; he was also prescribed atenolol, 25 mg. *Id.* at 9. He alleges that he still received the lower Keppra dose on November 11, 2023. *Id.* He alleges that he regularly experienced seizures while on this dosage. *Id.* Additionally, he claims he was not seen in chronic care after being promised that he was on the schedule for the following week. *Id.* Feick complains that his

---

[3] Feick denies ever refusing medical attention except for a psychological evaluation related to his placement in segregation, on August 16, 2023. ECF 29, at 12.

2

medications ran out again on December 9, 2023, while LPN Besong renewed his medications upon his request on December 15, 2023. *Id.*; *see also* ECF 29, at 4. He alleges that he continued to receive the lower Keppra dose despite his ongoing seizures. ECF 5, at 9.

Feick's medications ran out again on January 13, 2024, without warning. ECF 5, at 10. His alleges that his numerous sick call requests were ignored. *Id.* at 9–10. Feick suffered a seizure on February 20, 2024, causing a head injury when he fell from his top bunk onto the concrete floor. *Id.* at 10; *see also* ECF 29, at 5. Afterwards, Feick saw a chronic care provider for the first time on February 21, 2024, and his Keppra dosage was increased to 750 mg, but only for one day. ECF 5, at 10; *see also* ECF 29, at 8–9. Feick also alleges disruptions in his medications on March 20 and June 20, 2024. ECF, 5 at 10. After the first disruption, RN Adebayo saw him on April 26, 2024, gave Feick ibuprofen and pledged to "look into" the issue. *Id.*; *see also* ECF 29, at 6. After the second disruption, Feick claims he informed Nurse Fox several times that he was having seizures, including on July 11, 2024, and on July 17, 2024, and Fox told Feick that Fox "personally told the provider [Fox] doesn't know why Plaintiff is being neglected[.]"[4] ECF 5, at 10; ECF 29, at 7, 9–10. On July 24, 2024, Feick saw Dr. Hill in chronic care and all of his medications were renewed. ECF 5, at 11.

Feick also complains that he was injured because he was forced to sleep on a top bunk despite his known seizure disorder. ECF 5, at 11. He alleges that he was placed in administrative segregation on August 16, 2023. *Id.* Correctional staff asked Feick if he had a bottom bunk pass

---

[4] Feick also names LPN Fokam "Fox" Magloire in his Amended Complaint. The U.S. Marshal made an unsuccessful attempt to serve Magloire. *See* ECF 33. As Feick does not allege anything more than that Magloire knew about his seizures and passed along his concerns to a medical provider, he fails to state a claim for relief. Feick does not allege any wrongdoing by Magloire and therefore the claim against Magloire will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

3

which he could not produce because he had transferred to JCI days earlier. *Id.* He raised his need for a bottom bunk at his sick call visit on November 10, 2023, but he alleges that his request was ignored by LPN Besong and further claims he was never seen in chronic care and thus never given a lower bunk pass. *Id.* at 12. Even after his cellmate returned to general population, Feick claims that another inmate was given the bottom bunk in Feick's cell. *Id.*; *see also* ECF 29, at 5. Feick alleges that on February 20, 2024, he had a seizure while in bed and fell from the top bunk. ECF 5, at 12. Feick says he submitted a complaint, which Sergeant Smith "signed" on February 24, 2024. *Id.* In addition to his head injury, Feick alleges that he suffered a facial laceration due to the fall. *Id.* at 13. Feick was treated at a hospital and given an indefinite bottom bunk pass. *Id.*; *see also* ECF 29, at 5.

### B. Defendants' Motions and Replies

At the outset, it is important to note that none of the allegations described above concern conduct taken after August 1, 2024. Defendant Adebayo attests that YesCare's contract with the Department of Public Safety and Correctional Services ("DPSCS") expired on July 31, 2024, and Centurion became the contracted medical provider for DPSCS on August 1, 2024. ECF 25-2, at ¶ 17; *see* ECF 32-1. As all of Feick's allegations predate the time Adebayo was a Centurion employee, the Court need only address the motion filed by YesCare counsel (ECF 25). As such, Centurion counsel's motion of behalf of Adebayo (ECF 17) will be granted.

Along with their motion, Defendants submit the declarations of Defendants Adebayo and Besong (ECFs 25-2 and 25-9) and Feick's medical records (ECF 25-3). Based on these records, Defendants assert that they are entitled to summary judgment.

RN Adebayo attests that Feick did not correctly follow the medication refill process, which requires inmates to request refills through a sick call request before they run out and to attach a

4

refill sticker and mark the box for "medication refill." ECF 25-2, at 2 ¶ 5. Adebayo states that he cannot prescribe medications as an RN so a prescribing provider would have to refill Feick's atenolol and Keppra. *Id.* ¶ 6. Adebayo also denies having the authority to issue bunk passes and states that medications are generally distributed by LPNs. *Id.*

On August 10, 2023, Feick was transferred from Eastern Correctional Institution to JCI. *See* ECF 25-3, at 11–13. He was sent to JCI with 14 atenolol 25 mg tablets and 36 Keppra 750 mg tablets. *Id.* at 11–12. In addition to these, Feick was prescribed Zyrtec 10 mg through August 24, 2023. *Id.* at 11. Records reflect that Feick refused medical screening upon placement in segregation in August of 2023 by stating, "I'm ok" on a "release of responsibility" form signed on August 16, 2023. ECF 25-5, at 22. The August Medication Administration Record shows that he was given his Keppra dose twice daily until August 24, with LPN Besong administering many of these doses.[5] ECF 25-4, at 29–30. Feick did not file a sick call until September 24, 2023, stating he had not received his medication. ECF 25-6, at 23. He filed another sick call request on November 1, 2023, complaining about the lapse in receiving his medications despite his chronic conditions. *Id.* at 21.

Feick was seen on November 10, 2023, by NP Victoria Emelogu. ECF 25-3, at 4–7. He requested a medication refill, reporting the two-month lapse. *Id.* at 4. Feick denied having any seizures during that time. *Id.* NP Emelogu restarted Feick on Keppra at 500 mg twice daily and planned to increase the dosage gradually; she also instructed Feick to request medication refills before they expire. *Id.* Additionally, she checked Feick's blood pressure which was severely

---

[5] LPN Besong also administered Feick's Keppra in November 2023. ECF 25-4, at 27-28. Besong attests that she could not ignore his medication needs because as an LPN she cannot prescribe medication and does not conduct sick call appointments. ECF 25-9, at ¶ 5. Furthermore, Besong cannot administer medication without an active order. *Id.*

5

elevated so he was administered a single dose of Clonidine. *Id.* NP Emelogu noted that his blood pressure was lower one hour later and ordered a blood pressure check three times per week for two weeks. *Id.*; ECF 25-5, at 27. His atenolol and Zyrtec prescriptions were renewed through December 9, 2023. ECF 25-3, at 6. Feick was referred to chronic care and educated on medication compliance and lifestyle changes. *Id.* Feick was administered his Keppra as ordered in November and he was given 30 tablets of atenolol and Zyrtec to keep with him and self-administer. ECF 25-4, at 27–28, 31. Feick did not submit a refill request himself; on December 15, 2023, a medication nurse informed NP Emelogu that Feick's prescriptions had expired[6] so she renewed them through January 13, 2024. ECF 25-3, at 3; ECF 25-6, at 33. Once again, Feick did not request refills before their expiration but filed a sick call request on February 14, 2024, requesting his medications and stating that he had not been seen in chronic care. ECF 25-6, at 19.

On February 20, 2024, Feick saw RN Kelsey Robinson after he suffered a seizure in his cell and fell off his top bunk. ECF 25-4, at 15–16. Although alert and responsive, Feick had elevated blood pressure and reported not having his seizure medication for over a month. *Id.* at 16. Feick suffered a laceration to his forehead and a severe headache. *Id.* His wound was treated and he was referred to PA Jewaher Abubaker for further evaluation. *Id.* Feick reported a headache, light headedness, and weakness to Abubaker. *Id.* at 12. Feick's left shoulder was tender and motion caused mild pain. *Id.* at 13. After discussion with Dr. Temesgen, Feick was transferred to an emergency room to have his head injury evaluated. *Id.* Abubaker renewed Feick's medications for three months and referred him to chronic care for his epilepsy, to be seen within one week. *Id.* Feick was issued an indefinite bottom bunk pass. ECF 25-5, at 29. At the Baltimore Washington

---

[6] LPN Besong attests that on one occasion Feick told her that he was out of seizure medication so she told a provider that could refill it. ECF 25-9, at ¶ 5. It appears that this is that same instance.

6

Medical Center, Feick received labs, a head CT, an EKG, and an X-ray of his left shoulder. ECF 25-6, at 26–32. He was discharged with instructions that he should receive Keppra 750 mg twice daily. *Id.* at 26.

Feick saw Dr. Khalid El-Bedawi for chronic care on February 21, 2024. ECF 25-4, at 8–11. Dr. El-Bedawi assessed Feick's blood pressure and allergic rhinitis as controlled and continued his atenolol and Keppra 750 mg prescriptions through June 19, 2024. *Id.* at 8. He also noted that Feick's x-ray and CT were unremarkable. *Id.*

RN Adebayo attests that Feick did not submit any medication refills before his atenolol prescription ran out. ECF 25-2, at 6 ¶ 14. Records reflect that Feick submitted sick calls on March 6 and 23, 2024, but did not request refills in either. ECF 25-6, at 18 (March 23, 2024), 20 (March 6, 2024). RN Adebayo saw Feick for these sick calls on April 26, 2024 to discuss Feick's complaints of shoulder pain from his fall. ECF 25-4, at 6–7. Adebayo did not find any bruising or swelling to Feick's shoulder and determined that Feick was able to perform a full range of motion, though with some mild pain. *Id.* at 7. Feick was provided ibuprofen 400 mg for five days and directed to return if the pain worsened. *Id.* Adebayo avers that Feick did not make any complaints regarding his hypertension or medication refills during his appointment. ECF 25-2, at 6 ¶ 14.

On July 18, 2024, Feick was scheduled for a chronic care appointment but did not appear. ECF 25-4, at 4–5. Dr. Michael Agonafir requested he be rescheduled in two weeks. *Id.* Feick saw Dr. Darryl Hill on July 24, 2024. *Id.* at 1–2. Feick complained that he had not received his atenolol prescription since March and had not received his Keppra for three weeks. *Id.* at 1. Feick reported experiencing a seizure two days prior. *Id.* Dr. Hill renewed the atenolol, Keppra, and Zyrtec through November 20, 2024, and ordered Feick to return in three months. *Id.* at 2.

## C. Feick's Motion for Summary Judgment

Feick seeks summary judgment in his favor on all counts. *See* ECF 29.[7] He provides a factual narrative noting each Defendants' alleged involvement in his care, as well as other health care professionals who are not noted as defendants in this suit. As to Besong, Feick reiterates that she was "assigned to pill call dispense for segregation at JCI" and "dealt with [Feick] on a daily basis." *Id.* at 7. He notes that he "told [] Besong [that] he was not being seen and sick calls were ignored" but Besong responded by saying "she can't re-new med[ications]." *Id.* at 8. However, he argues that NP Emelogu "says she renewed [Plaintiff's] med[ications] off of [] Besong's word." *Id.* In other words, he reiterates that Besong "is not powerless as she claims." *Id.*

Feick also alleges that "Adebayo has [a] history of ignoring inmate sick call requests" and cites to a month-long delay in being seen after submission of a sick call slip on March 26, 2024. *Id.* at 9. Feick claims he told Adebayo on April 26, 2024 that "he was being ignored and needed his chronic care meds." *Id.* Adebayo allegedly responded by telling Feick "the system was down" and promised to "investigate" the situation, which Feick claims Adebayo failed to do. *Id.* Feick notes on a document recording his April 26, 2024 visit that Adebayo saw Feick, but "didn't enter [information] about my chronic conditions." *Id.* at 29-1, at 25. Feick also notes on another summary of a "nurse visit" with Adebayo on April 26, 2024, that he "informed [Adebayo that Feick] need[ed] [his] chronic care med[ications]" but alleges that Adebayo "never entered it." *Id.* at 47.

---

[7] A portion of Feick's motion addresses administrative exhaustion and violations of state regulations related to medical care for inmates upon first arriving at a state detention facility. These issues are not applicable to the matter at hand and thus are not addressed in this opinion.

8

## III. **STANDARD OF REVIEW**

Defendant Smith argues that the amended complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), or, alternatively, that summary judgment should be granted in their favor pursuant to Fed. R. Civ. P. 56. *See* ECF 14-1. A motion to dismiss styled in the alternative as a motion for summary judgment implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011).

The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c); *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citation omitted). In contrast, Rule 12(d) requires courts to treat a motion as one for summary judgment if matters outside the pleadings are considered and not excluded. *See* Fed. R. Civ. P. 12(d). In this instance, the Court need not address the attached exhibits to resolve the motion. For this reason, Sgt. Smith's motion will be construed solely as a motion to dismiss.

In reviewing a Rule 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). Further, a federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Defendants Adebayo and Besong move for dismissal or for summary judgment. As noted, a motion styled in this manner implicates the Court's discretion under Rule 12(d). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff

has notice that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When, as here, a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261; *see also Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 657 (D. Md. 2021) ("Notably, 'the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion.'" (quoting *Ridgell v. Astrue*, Civ. No. 10-3280-DKC, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012)). Feick has been on notice that Defendants seek summary judgment since the filing of their motion and after receiving the Court's Rule 12/56 Notice, *see* ECF 26; *see also* Fed. R. Civ. P. 12(d) (noting that if a court is going to treat a motion to dismiss as one for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion"). Feick even filed his own motion for summary judgment, *see* ECF 29, thus acknowledging that this disposition was appropriate on the record before the Court.

The Court is aware that the Fourth Circuit recently "cautioned that district courts should not consider summary judgment motions where the nonmoving party has not had an opportunity to discover information essential to its opposition." *Farabee v. Gardella*, 131 F.4th 185, 193 (4th Cir. 2025) (citing *Shaw v. Foreman*, 59 F.4th 121, 128–29 (4th Cir. 2023)). At the same time, it bears repeating that Plaintiff himself has submitted evidence extrinsic to the pleadings in support of his own motion for summary judgment. *See* ECF 29-1, at 1–70. He also cites to those facts

10

presented by Defendants in their respective motions. ECF 29, at 1–13.[8] As such, Defendants' dispositive submission will be treated as a motion for summary judgment under Fed. R. Civ. P. 56 because materials outside the original pleadings have been considered.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (first quoting

---

[8] Relevant to the Fourth Circuit's decision in *Farabee* was the fact that "the movant exclusively control[led] evidence relevant to the nonmovant's opposition." *Farabee*, 131 F.4th at 195. Here, however, the evidence bearing on the summary judgment was provided to Plaintiff and Plaintiff, through his own submission, revealed that much of it was within Plaintiff's own control.

11

*Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993); and then citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## IV. ANALYSIS

### A. Defendant Smith

Liability under § 1983 attaches only upon personal participation by a defendant in a constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Here, Feick alleges only that Smith signed a grievance that Feick submitted, in which Feick sought to be assigned to a bottom bunk. ECF 5, at 12. Feick's allegations do not otherwise state any wrongdoing by Smith. Even if the Court liberally construes his allegations, Smith's purported denial of Feick's grievance, alone, is not sufficient to state a claim for relief. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (finding that an allegation that warden "rubber stamped" grievances was not enough to establish personal participation) (citing *Whitington v. Ortiz*, 307 F. App'x 179, 193 (10th Cir. 2009) (determining that "denial of the grievances alone is insufficient to establish personal participation in [ ] alleged constitutional violations")). Moreover, even to the extent Feick alleges that Smith was aware, via the grievance, that Feick was in need of a bottom bunk pass, he still does not plead any facts showing personal misconduct by Smith which caused this alleged inadequate housing. Indeed, he fails to allege that Smith could even issue one. Therefore, Smith's motion to dismiss is granted as to Smith.

### B. Defendants Adebayo and Besong

Feick raises an Eighth Amendment claim against Defendants Adebayo and Besong which requires evidence of both a serious medical need and deliberate indifference to that need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). Deliberate indifference to a serious medical need requires proof that, objectively, the

12

prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (holding that failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839–40. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that [their] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have

inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842). However, "an inadvertent failure to provide adequate medical care" does not amount to deliberate indifference." *Estelle*, 429 U.S. at 105–06; *accord Anderson*, 877 F.3d at 543 ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.").

Defendants assert that even if Feick's hypertension and epilepsy are objectively serious medical needs, they were not deliberately indifferent to them. ECF 25-1, at 15. As a preliminary matter, the Court finds that Feick's hypertension, seizure disorder, and shoulder injury all present serious medical needs as they have "been diagnosed by a physician as mandating treatment." *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241). Therefore, the remaining issue is whether there exists a genuine dispute of material fact that Defendants were deliberately indifferent to those needs.

Importantly, it appears undisputed on this record that neither RN Adebayo nor LPN Besong have the authority to prescribe medications or write bottom bunk passes. Therefore, as to Feick's allegations regarding the changes in dosage, renewal of his prescriptions, and receiving a bottom bunk pass, the record shows that neither Defendant did, nor could have, personally participated in such conduct. Though Feick hints that Besong "is not powerless," ECF 29, at 8, he fails to generate a dispute of material fact related to Besong's ability to prescribe medication. Further, even crediting that Adebayo failed to record Plaintiff's April 26, 2024 complaint about not receiving his

medications, ECF 29-1, at 47, this does not change the fact that Adebayo apparently did not have the authority to provide the relief Plaintiff sought as Adebayo could not prescribe mediations. Thus, neither Adebayo or Besong can be held liable under § 1983 having not personally participated in a constitutional violation. *Trulock*, 275 F.3d at 402.

The record also shows that both Adebayo and Besong made efforts to address Feick's medical issues in the limited instances in which they were involved in his care. Adebayo saw Feick on only one occasion in response to sick calls Feick made for his shoulder pain. ECF 25-4, at 6–7; ECF 29, at 9 (noting that Plaintiff saw Adebayo on April 26, 2024). Nothing in the record indicates that Adebayo was responsible for scheduling the sick calls and thus was not responsible for causing the delays Feick alleges. Adebayo provided Feick with pain medication for his shoulder but otherwise was not informed of nor able to address Feick's need for hypertension and epilepsy medications. *Id.* At worst, Adebayo failed to fully investigate the delay in effectuation Feick's March 2024 sick call despite promising to do so, or failed to report any findings on that front directly to Feick. Much more is required to establish deliberate indifference. Similarly, the record reflects that Besong did what she could do as an LPN, which was to distribute medication to Feick. *See* ECF 25-9, at 2 ¶ 5. When Feick informed her that he was not receiving his medication as needed, Feick himself acknowledges that Besong informed a provider who was actually able to renew the prescription. ECF 29, at 4. The evidence before the Court shows that neither Besong nor Adebayo ignored the medical issues presented to them, thus demonstrating that they were not deliberately indifferent to Feick's needs.

The Court acknowledges Feick's frustration with not having his medications consistently re-filled and in not being timely seen for sick call requests. However, to the extent that Feick was not consistently or timely scheduled for chronic care appointments, which may have prevented

such lapses, those allegations do not appear to amount to more than negligence by other JCI medical staff not sued here. Since any such failures are not Defendants' responsibility, their motion for summary judgment will be granted.

### C. Feick's Request for Appointment of Counsel

Feick also seeks "[l]egal assistance to help [him] move this complex case through the courts in a timely manner." ECF 34, at 3. Under 28 U.S.C. § 1915(e)(1), the Court has discretion to appoint counsel for indigent civil litigants in exceptional circumstances. *See Bailey-El v. Hous. Auth. of Balt. City*, 185 F. Supp. 3d 661, 670 (D. Md. 2016) (citing *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975), *aff'd in part, vacated on other grounds*, 686 F. App'x 228 (4th Cir. 2017). Whether exceptional circumstances exist is a fact-specific determination. *See Whisenant v. Yaum*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989). Exceptional circumstances exist where (1) "the plaintiff 'has a colorable claim'" and (2) "considering the claim's objective complexity and the plaintiff's subjective abilities, . . . the plaintiff 'lacks the capacity to present it.'" *Jenkins v. Woodard*, 109 F.4th 242, 247 (4th Cir. 2024) (quoting *Whisenant*, 739 F.2d at 162). In *Jenkins*, the Fourth Circuit emphasized that in determining whether exceptional circumstances warrant appointment of counsel to a civil litigant, a district court should consider a litigant's carceral status, educational background, legal understanding, mental illness, and ability to access both legal research materials and evidence, as well as whether the case depends on the competing credibility of witnesses, who the pro se litigant would have difficulty cross-examining without the aid of a lawyer. *Id.* at 248–49.

While Feick is incarcerated, he has shown himself to be able to navigate the legal system through the filing of cogent motions and memorandum. Indeed, his request comes after the filing

16


of motions and candidly admits that his need for counsel is pegged more to an understandable desire to speed the process along than it is a request for help in drafting filings.[9] Given the denial of all pending motions, the matter is now closed and the assistance of counsel is not needed for cross-examination or additional research. *See Jenkins*, 109 F.4th at 247–48. Accordingly, the motion seeking appointment of counsel (ECF 34) is denied.

### V.  CONCLUSION

For the reasons stated herein, Defendant Smith's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF 14), construed as a motion to dismiss, is GRANTED; Defendants Adebayo and Besong's Motion to Dismiss or, Alternatively, for Summary Judgment (ECF 25), construed as a motion for summary judgment, is GRANTED; Feick's Motion for Summary Judgment (ECF 29) is DENIED; and Defendant Adebayo's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF 17) is DENIED as moot. Judgment is GRANTED in favor of Defendants Adebayo and Besong and against Feick. The Amended Complaint is DISMISSED against Smith and Fokam Magloire, LPN. Feick's motion seeking the appointment of counsel (ECF 34) is DENIED.

A separate order follows.

| | |
|---|---|
| __8/28/2025__ | ___/s/___ |
| Date | Brendan A. Hurson |
| | United States District Judge |

---

[9] Feick also asks for a status update and provides his new address. ECF 34, at 1. The docket has been updated to reflect his new address. Given the resolution of all pending motions, the Court denies the request for a status update as moot.